United States District Court
Southern District of Texas
**ENTERED**
July 18, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LISA MIMS and JOSHUA JACKSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-644 |
| | § | |
| J.D. OLIVER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are Plaintiffs' Motion for Summary Judgment (Doc. 91), Defendant's Motion for Summary Judgment and Amended Motion for Summary Judgment (Docs. 92, 97), Defendant's Motion to Strike Plaintiffs' Summary Judgment Evidence (Doc. 103), Plaintiffs' Motion for Partial Summary Judgment (Doc. 114), and Plaintiffs' Objections to Defendant's Exhibits (Doc. 165). The court has considered the motions, the responses, all other relevant filings, and the applicable law.

For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion to strike be **GRANTED IN PART AND DENIED IN PART**, Plaintiffs' objections be **OVERRULED**, Plaintiffs' motion for summary judgment be **DENIED**, Plaintiffs' motion for partial summary judgment be **DENIED AS MOOT**, and Defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART AS MOOT**. Because the court

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 18, Ord. Dated July 1, 2015.

recommends dismissal of all of Plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and **RECOMMENDS** that this action be **DISMISSED**.

## I.  Case Background

Plaintiffs filed this action on March 11, 2015, against Defendant J.D. Oliver ("Oliver"), a former professor at Prairie View A&M University ("Prairie View"), alleging civil rights violations under 42 U.S.C. § 1983 ("Section 1983") and several related state law claims.

## A.  Factual Background

Plaintiff Lisa Mims ("Mims") was a student at Prairie View and registered for Oliver's computer education course during the Fall 2013 semester.[2]   Mims averred that she visited Oliver's office several times, and, on one occasion, Oliver propositioned Mims for sex at a hotel.[3]   Mims became alarmed at Oliver's statement and stood up to leave his office.[4]   Oliver blocked Mims from leaving his office, forced her up against his body, and grabbed her

---

[2]     See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2[d] Mot. to Compel, Dep. of Oliver p. 53.  In Plaintiffs' motion for summary judgment, Plaintiffs list this deposition as one of their exhibits, but cite to Document 76-5 rather than including the full text with the motion for summary judgment.

[3]     See Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶ 3.

[4]     See id.

breast.[5]   Out of concern that he would try to rape her, Mims averred, Mims pulled away and left his office.[6]

Oliver denied under oath that Mims came to his office and that he grabbed her breast.[7]   Oliver testified that he loaned Mims a textbook after Mims explained to him that she was not performing well in his class because she had a job at night in addition to school responsibilities.[8]   Oliver also told Mims that she could work with his teaching assistant but denied that he offered her help on the final exam or with her missing assignments.[9]

Mims averred that Oliver obtained her cell phone number from an unknown source.[10]   During his deposition, Oliver was questioned about phone calls made to Mims from his cell phone.  When asked to confirm that the number from which the calls were placed was his cell phone number, Oliver stated "It looks like—if I can remember correctly, my old number that was stolen."[11]   The phone records showed frequent calls from late November 2013 through December 14,

---

[5]    See id.

[6]    See id.

[7]    See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2[d] Mot. to Compel, Dep. of Oliver p. 56.

[8]    See id. p. 57.

[9]    See id. p. 58.

[10]    See Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶ 4.

[11]    Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2[d] Mot. to Compel, Dep. of Oliver p. 65.

2013, to Mims' cell phone from Oliver's former number.[12]   Oliver denied that he called Mims and stated that he did not know why the phone records reflected that he called Mims on those dates.[13]   Mims averred that Oliver offered her, in person and over the phone, an "A" in his class without taking the final or turning in missing assignments if she agreed to have sex with him and threatened to fail her if she did not have sex with him.[14]

On Saturday, December 14, 2013, Oliver testified, he needed to grade papers to meet the end of the semester deadline.[15]   Because his wife had scheduled the carpets to be cleaned, Oliver planned to go to Prairie View to work.[16]   On his way to campus, Oliver stopped at an IHOP to eat breakfast.[17]   After eating, Oliver began feeling faint so he decided to check into a nearby hotel instead of going to campus to work.[18]   Mims called Oliver to return the textbook she had borrowed.[19]   Oliver told her that he would not be working on

---

[12]   See id. pp. 66-68.

[13]   See id. pp. 66-69.

[14]   See Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶ 5.

[15]   See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2[d] Mot. to Compel, Dep. of Oliver pp. 70-71.

[16]   See id. p. 72.

[17]   See id. pp. 72-73.

[18]   See id. pp. 73-74.

[19]   See id. pp. 78-79, 81-83.

campus that day.[20]  Mims averred that, although she agreed to meet
Oliver at the hotel, she did not intend to have sex with him, but
instead her intention was to confront him about his inappropriate
behavior towards her in the presence of witnesses.[21]  Mims and
Jackson averred that they wanted proof that Oliver had asked Mims
to go to the hotel to have sex with him.[22]  Oliver testified that
he intermittently graded and took naps that day until Mims arrived
at the hotel with Jackson and two other men around 4:30 in the
afternoon.[23]

Mims, Jackson, and two other men[24] went to the hotel room.[25]
When Mims knocked on the door, Oliver stopped grading, looked out
through the eyehole in the door, and saw Mims and the three men.[26]
Oliver testified that he opened the door for them and they "threw
[him] on the floor."[27]  As one of the men held Oliver on the floor,

---

[20]    See id.

[21]    See Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶¶ 6-
7.

[22]    See Doc 91-10, Ex. 11 to Pls.' Mot. for Summ. J., Aff. of Jackson ¶¶
4, 6.

[23]    See id. Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency
2$^d$ Mot. to Compel, Dep. of Oliver pp. 78-82.

[24]    In Oliver's deposition, Oliver mostly refers to Mims, Jackson, and
the two men as "they" in terms of what happened at the hotel room; thus, the
court will refer to them as "they" unless Oliver has been more specific.

[25]    See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2$^d$
Mot. to Compel, Dep. of Oliver pp. 78-83, 85.

[26]    See id. pp. 83, 85.

[27]    See id. p. 85.

5

they demanded that Oliver give them $9,000 and then took his credit cards, driver's license, and thirteen dollars in cash from his wallet.[28]   They recorded the incident and threatened Oliver that they would disclose prior recordings they had of his conversations with Mims if he did not pay them.[29]   Jackson played one of the recordings for Oliver.[30]   They also looked through Oliver's computer and took "pictures of [him] with condoms."[31]   Mims and Jackson averred that they did not rob Oliver at the hotel.[32]

Oliver testified that after Plaintiffs and the two men left, Oliver went to the front desk and called the police.[33]   Oliver subsequently filed criminal charges against Plaintiffs.[34]

Jackson testified that, after the incident took place at the hotel room, he and Mims went to Oliver's home and put notes in his mailbox and on his car stating, "J.D. Oliver contact 281-782-1711 or this information will be shared! –thank you."[35]   Jackson

---

[28]   See id. pp. 85-86.

[29]   See id.

[30]   See Doc. 91-10, Ex. 11 to Pls.' Mot. for Summ. J., Aff. of Jackson ¶ 5.

[31]   See id. pp. 88-89.

[32]   See Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶ 8; Doc. 91-10, Ex. 11 to Pls.' Mot. for Summ. J., Aff. of Jackson ¶ 7.

[33]   See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2$^{d}$ Mot. to Compel, Dep. of Oliver pp. 91-92.

[34]   See id. p. 134.

[35]   See Doc. 98, Ex. 2 to Def.'s Am. Mot. for Summ. J., Dep. of Jackson p. 38.

testified that they went to Oliver's home because Mims had not received a grade for the class.[36]   Additionally, Oliver testified that he received an email from Mims on December 15, 2013, informing him that, because Oliver had not contacted them as instructed, they would release the recordings and a video to his wife, his place of work, and local radio stations.[37]

Oliver was later terminated by Prairie View as a result of Mims' complaint of the incident.[38]   Oliver subsequently filed two lawsuits, one against Plaintiffs and another against Prairie View.[39] Both lawsuits were dismissed on jurisdictional grounds.[40]

**B.   Procedural Background**

Plaintiffs filed their complaint on March 11, 2015, alleging the following federal constitutional causes of action brought under Section 1983: equal protection, First Amendment retaliation, and unreasonable seizure under Section 1983.[41]   Plaintiffs also brought state law causes of action: Texas constitutional claims, official

---

[36]   See Doc. 92-2, Ex. 2 to Def.'s Mot. for Summ. J., Dep. of Jackson pp. 65-66.

[37]   See Doc. 76-5, Ex. 3 to Pls.' Resp. in Opp'n to Def.'s Emergency 2d Mot. to Compel, Dep. of Oliver p. 132.

[38]   See id. p. 135.

[39]   See Oliver v. Mims, et al., Civ. Action No. H-15-654 (S.D. Tex. Mar. 12, 2015), Doc. 1, Oliver's Compl.; Oliver v. Prairie View A&M Univ., Civ. Action No. H-15-1665 (S.D. Tex. June 16, 2015), Doc. 1, Oliver's Compl.

[40]   See Oliver v. Mims, et al., Civ. Action No. H-15-654 (S.D. Tex. Apr. 8, 2015), Doc. 6, Ord. of Dismissal; Oliver v. Prairie View A&M Univ., Civ. Action No. H-15-1665 (S.D. Tex. Feb. 3, 2016), Doc. 28, Final J.

[41]   See Doc. 1, Pls.' Compl.

oppression, unlawful restraint, assault, slander per se, and malicious prosecution.[42] Plaintiffs filed a first amended complaint with leave of court on January 15, 2016, stating that they made changes that included: (1) adding a claim for abuse of process; (2) dropping the official oppression cause of action; and (3) substituting a federal malicious prosecution claim in lieu of a state law malicious prosecution claim.[43]   Additionally, Mims recharacterized her equal protection claim as equal protection and substantive due process claims.[44]   Plaintiffs later supplemented their first amended complaint to add a claim of invasion of privacy, which is the subject of the pending motion for partial summary judgment.[45]

The deadline for dispositive motions was extended to November 28, 2016, after Oliver failed to timely produce certain discovery items and failed to provide potential dates for his and his wife's depositions.[46]   On November 28, 2016, Plaintiffs filed their motion for summary judgment.[47]   On November 29, 2016, one day past the

---

[42]   See id.

[43]   See Doc. 36, Pls.' Mot. for Leave to File Am. Pleading; Doc. 36-1, Pls.' 1st Am. Compl.; Doc. 42, Ord. Dated June 2, 2016.

[44]   See Doc. 36-1, Pls.' 1st Am. Compl.

[45]   See Doc. 71, Opposed Mot. to Supplement 1st Am. Compl.; Doc. 71-1, Pls.' 1st Supp. to 1st Am. Compl.; Doc. 114, Pls.' Mot. for Partial Summ. J.

[46]   See Doc. 54, Pls.' Mot. to Compel Disc.; Doc. 62, Min. Entry Ord. Dated Sept. 19, 2016.

[47]   See Doc. 91, Pls.' Mot. for Summ. J.

deadline for dispositive motions, Oliver filed his motion for summary judgment.[48]  Oliver asked the court for leave to file his motion for summary judgment one day late, which the court granted.[49] However, without leave of court, on December 15, 2016, Oliver filed a "corrected" motion for summary judgment along with some, but not all, of the exhibits referenced in the motion.[50]  Oliver subsequently filed a motion to strike Plaintiffs' summary judgment evidence and a response to Plaintiffs' motion.[51]

Plaintiffs filed a response to Oliver's corrected motion for summary judgment on December 20, 2016.[52]  Plaintiffs, in their response, objected to the court's consideration of Oliver's incomplete and/or missing exhibits.[53]  On June 6, 2017, the court ordered Oliver to produce a complete set of exhibits to the court by June 9, 2017.[54]  Oliver submitted the missing exhibits on June 8, 2017.[55]  Plaintiffs object to the court's consideration of these

---

[48]    See Doc. 92, Def.'s Mot. for Summ. J.

[49]    See Doc. 117, Min. Entry Ord. Dated Jan. 18, 2017.

[50]    See Doc. 97, Def.'s Am. Mot. for Summ. J.  In fact, most of the pages of the attached exhibits are blank.

[51]    See Doc. 103, Def.'s Mot. to Strike Pls.' Summ. J. Evid.; Doc. 104, Def.'s Resp. to Pls.' Mot. for Summ. J.; Doc. 105, Def.'s Exs. to Def.'s Resp. to Pls.' Mot. for Summ. J.

[52]    See Doc. 106, Pls.' Resp. to Def.'s Mot. for Summ. J.

[53]    See Doc. 92, Def.'s Mot. for Summ. J.; Doc. 97, Def.'s Am. Mot. for Summ. J; Doc. 98, Def.'s Exs. to Def.'s Am. Mot. for Summ. J.

[54]    See Doc. 158, Ord. Dated June 6, 2017.

[55]    See Doc. 161, Def.'s Exs.

exhibits.[56]

## II.  Objections and Preliminary Issues

Oliver lodges a number of objections to Plaintiffs' summary judgment evidence in his motion to strike.  Additionally, in his response to Plaintiffs' motion for summary judgment, Oliver asks the court to strike statements he characterizes as conclusory contained in the requests for admission and the first amended complaint.  Plaintiffs object to Oliver's evidence and presentation of the facts and contend that the complaint and requests for admission are deemed admitted due to Oliver's late-filing of certain documents.

## A.  <u>Legal Standard</u>

A party must support its factual positions on summary judgment by citing to particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).  Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Affidavits supporting summary judgment "must be made on

---

[56]    <u>See</u> Doc. 165, Pls.' Objs. to Def.'s Exs.

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The court may strike an affidavit that violates this rule.  Akin v. Q-L Investments, Inc., 959 F.2d 521, 530 (5th Cir. 1992).  Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence.  Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5th Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Hearsay is not admissible evidence.  Fed. R. Evid. 802. Hearsay is an out-of-court statement that is offered for "the truth of the matter asserted in the statement."  Fed. R. Evid. 801. Statements offered against an opposing party made "by the party in an individual or representative capacity" are not hearsay."  Fed. R. Evid. 801(d)(2).  The Federal Rules of Evidence also list exceptions to the rule against hearsay.  Fed. R. Evid. 803-804, 807.

For purposes of authentication, Federal Rule of Evidence 901(a) requires "evidence sufficient to support a finding that the item is what the proponent claims it is."  Circumstantial evidence, such as the document itself and the circumstances surrounding its discovery, is sufficient for authentication.  In re McLain, 516 F.3d 301, 308 (5th Cir. 2008).  The Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of

disputed evidence . . . It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." Id. (quoting United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993), and prior case law).

**B.  Oliver's Objections**

Oliver challenges Plaintiffs' reliance on: (1) unauthenticated exhibits; (2) the complaints in other related cases; and (3) Plaintiffs' affidavits.

**1.  Emails and Requests for Admission**

Oliver contends that Plaintiffs' requests for admission, served on Oliver on March 21, 2016, are inadmissible hearsay because the document was not accompanied by a supporting affidavit. This defect has been corrected by the affidavit submitted by Plaintiffs' counsel.  Oliver also argues that the requests for admission are inadmissible because his counsel was not served with the request for admission on March 21, 2016.  Oliver has not provided evidence supporting this argument.  Oliver's objections to Exhibit 1 are **OVERRULED**.

Oliver contends that an email sent to Plaintiffs' counsel attaching Oliver's responses to Plaintiffs' requests for admission is improper because no affidavit was attached to authenticate this email.  As with Exhibit 1, Plaintiffs have attached an affidavit from Plaintiffs' attorney authenticating this exhibit.  Therefore, Oliver's objection is **OVERRULED**.

12

Oliver objects to Exhibit 4, a series of emails between Plaintiffs' attorney and Oliver's attorneys on the grounds that it has not been authenticated, that it is conclusory and self-serving, and that it omits some emails in the string.  Plaintiffs corrected any authentication issue by their attorney's affidavit attached to their response.  Reviewing Exhibit 4, the emails are not conclusory or self-serving, as the exhibit merely shows email correspondence between the attorneys concerning the requests for admission.  Additionally, Oliver has not provided any evidence to show that this email chain is incomplete or that an omitted email is relevant to any dispute in this case.  Therefore, Oliver's objections are **OVERRULED**.

### 2.  Complaints/Court Documents

Plaintiffs have attached two original complaints and two amended complaints from related cases, one in which Oliver sued Plaintiffs and another in which Oliver sued Prairie View and others.  Oliver objects to Plaintiffs' reliance on the original complaint from each of these cases, arguing that they are not competent summary judgment evidence because they are unverified complaints.  Plaintiffs contend that these complaints are judicial admissions that are binding on Oliver.

Judicial admissions are "factual assertions in pleadings . . . [that are] conclusively binding on the party who made them." Blankenship, 653 F. App'x 330, 335 (5th Cir. 2016)(quoting White v.

13

ARCO/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir. 1983)).  Judicial admissions withdraw facts from contention.  Id. (quoting Martinez v. Bally's La., Inc., 244 F.3d 474, 476 (5th Cir. 2001)).  However, "judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made."  Universal Am. Barge Corp. v. J-Chem, Inc., 946 F.2d 1131, 1142 (5th Cir. 1991).

Oliver's pleadings in other cases are not judicial admissions in this case.  See id.  Moreover, Oliver specifically challenges the inclusion of the original complaints, not the first amended complaints.  The Fifth Circuit has held that pleadings that have been withdrawn may not be considered as judicial admissions.  Blankenship, 653 F. App'x at 335-36.

However, to the extent that they are inconsistent with positions Oliver has taken in this suit, these pleadings may be submitted as admissions against interest and they can be used for impeachment purposes.  See In re Zonagen, Inc. Secs. Litig., 322 F. Supp.2d 764, 783 (S.D. Tex. 2003)("Statements a party makes in pleadings in one case that are inconsistent with the positions a party takes in another case may be admissible as admissions against interest and for impeachment.").  Therefore, Oliver's objection is **SUSTAINED IN PART AND OVERRULED IN PART.**[57]

---

[57]   In a related argument, Oliver objects to the court's consideration of Plaintiffs' Exhibit 12 on the grounds that it was filed a day late without leave of court.  Exhibit 12 is a court order from a related case, Oliver v. Mims, et al., Civ. Action No. H-15-654 (S.D. Tex. Apr. 8, 2015), Doc. 6, Ord. Dated

### 3.  Plaintiffs' Affidavits

Oliver objects to the court's consideration of affidavits from Mims and Jackson in support of their motion for summary judgment. Oliver generally contends that Plaintiffs' affidavits contain inadmissible hearsay, legal conclusions, bare allegations of fact, and conclusory and non-specific inadmissible evidence. Oliver also argues that both Mims' and Jackson's affidavits contradict testimony they gave at an administrative hearing at Prairie View. Oliver's general objections to Mims' and Jackson's affidavits are **OVERRULED**.

Oliver specifically challenges four of Mims' statements in her affidavit as inadmissible hearsay.  First, Oliver contends that the assertions, "I did not give Defendant Oliver my cell phone number and I do not know how he got it.  I did not give Defendant Oliver permission to call me,"[58] are hearsay.  The court **OVERRULES** Oliver's objection as these are not out-of-court statements offered for the truth of the matter asserted but statements concerning her actions or non-actions.

Oliver objects to the following statements as hearsay: "I agreed to meet Defendant Oliver at a hotel (as described in the Complaint) but not for sex.  I went to tell him that I was upset

---

Apr. 8, 2015, wherein the court dismissed the action for lack of subject matter jurisdiction.  The court **OVERRULES AS MOOT** Oliver's objection as the court has not relied on this exhibit in ruling on the motions for summary judgment.

[58]      Doc. 91-9, Ex. 10 to Pls.' Mot. for Summ. J., Aff. of Mims ¶ 4.

with how he sexually harassed me and that he should not treat any person that way.  I told him these things at the hotel room."[59]  The first two sentences are not hearsay as they are statements concerning her actions or non-actions.  However, Mims' assertion of what she told Oliver at the hotel room is clearly hearsay.  In their response, Plaintiffs have not provided any other reason this statement was offered, instead arguing that it is not a statement.  Oliver's hearsay objections to this paragraph are **SUSTAINED IN PART AND OVERRULED IN PART**.

Finally, Oliver challenges the following two paragraphs in Mims' affidavit as inadmissible hearsay: (1) "I also went to get proof that he arranged for us to meet in a hotel for sex.  I was afraid that no one would believe my side of the story if I had no proof;"[60] (2) "I did not rob Defendant Oliver on Dec. 14, 2013, or on any other day."[61]  Oliver also challenges the same two statements in Jackson's affidavit.[62]  Neither of these averments contains an out-of-court statement.  Instead, they describe Mims' and Jackson's actions in conjunction with the facts involved in this case.

---

[59]     Id. ¶ 6.

[60]     Id. ¶ 7.

[61]     Id. ¶ 8.

[62]     Doc. 91-10, Ex. 11 to Pls.' Mot. for Summ. J., Aff. of Jackson ¶¶ 6-7.  Paragraph 6 in Jackson's affidavit reads "I also went to get proof that he arranged for him and Lisa Mims to meet in a hotel for sex.  I was afraid that no one would believe her side of the story if we had no proof."  Id.  Paragraph 7 states "I did not rob Defendant Oliver on December 14, 2013, or on any other day."  Id. ¶ 7.

16

Oliver's objections are **OVERRULED.**

Oliver also contends that Plaintiffs have not affirmatively shown that they are competent to testify about what is contained in the affidavits. However, both Mims' and Jackson's affidavits are based on their personal knowledge of the facts in this case. Therefore, Oliver's objection is **OVERRULED.**

As to Jackson's affidavit, Oliver complains that some of the statements in the affidavit are inadmissible hearsay. Oliver asserts that the following paragraph is inadmissible hearsay, "During the Fall 2013 semester, my girlfriend Lisa Mims told me several instances of Defendant Professor J.D. Oliver ['s] sexually harassing her as described in the First Amended Complaint."[63] Jackson's assertion that Mims told him about Oliver's sexual harassment is hearsay as proof of the fact that Oliver harassed Mims. Plaintiffs contend that this statement falls under Federal Rule of Evidence 803(3), the state of mind exception to hearsay. The state of mind exception, in relevant part, is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical conditions (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." Fed. R. Evid. 803(3). However, there is no assertion contained in that paragraph about anyone's state of mind.

---

[63]     <u>Id.</u> ¶ 3.

Oliver's objection is therefore **SUSTAINED**.

Oliver also argues the following statement is hearsay: "I played one such recording that Defendant Oliver heard."[64]  The court finds that this is not hearsay because there is no out-of-court statement; rather, Jackson is merely stating that he played a phone recording in Oliver's presence.  Oliver's objection is **OVERRULED**.

Oliver argues that paragraph four wherein Jackson states, "I went to meet Defendant Oliver at the hotel room (also described in the Complaint) to tell him that I was upset with how he sexually harassed my girlfriend, and that Lisa Mims and I had recorded several conversations between him and Lisa Mims in case he decided to fail Lisa Mims for not having sex with him.  I told him these things at the hotel room"[65] is inadmissible hearsay.  Plaintiffs argue in their response that this is not a statement or that it falls under the state of mind exception.  It is clearly a statement, as Jackson states that he told Oliver these assertions at the hotel rooms, and if Plaintiffs are offering these statements to prove that Oliver harassed Mims, it is hearsay.  The court disagrees with Plaintiffs' characterization of this as falling under the state of mind exception as it does not relate to Jackson's state of mind at the time of making the statements.  Oliver's hearsay objection is therefore **SUSTAINED.**

---

[64]    See id. ¶ 5.

[65]    See id. ¶ 4.

18

## C. **Oliver's Request to Strike**

In his response, Oliver asks the court to strike conclusory statements contained in the requests for admission and the first amended complaint.  The only arguments offered in support of this request are that: (1) his answer was timely because it relates back to the date that the court granted Plaintiffs' motion for reconsideration to supplement the amended complaint; and (2) "[t]here is no evidence that Oliver grabbed Lisa Mims' breast or grabbed Joshua Jackson anywhere."[66]

The court does not find that Oliver's arguments warrant striking statements contained Plaintiffs' amended complaint. Plaintiffs filed their amended complaint and the supplement to the amended complaint with leave of court.  As to the requests for admission, Federal Rule of Civil Procedure 36 allows "litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact."  In re Carney, 258 F.3d 415, 419 (5th Cir. 2001); Fed. R. Civ. P. 36(a)(1)(A).  The court finds that Plaintiffs' requests for admission were proper and did not ask Oliver to admit conclusions of law.  See In re Carney, 258 F.3d at 419.  Therefore, Oliver's request to strike conclusory statements in Plaintiffs' first amended complaint and requests for admission is **DENIED**.

## D. **Plaintiffs' Objections**

---

[66]    See Doc. 104, Def.'s Resp. to Pls.' Mot. for Summ. J. p. 7.

In their response to Oliver's motion for summary judgment and their separately-filed objections, Plaintiffs object to Oliver's summary judgment evidence on several bases.  Plaintiffs complain that Oliver failed to file his exhibits in a timely fashion, which prejudiced Plaintiffs in developing their response to Oliver's motion for summary judgment.  As the court granted Oliver leave to file the summary judgment evidence late, this objection is **OVERRULED**.  Plaintiffs also object to an email from "Ex international" to Oliver dated December 15, 2013, as unauthenticated, modified, and irrelevant.  Although the court shares Plaintiffs' concerns, it did not rely on the exhibit in reaching its decision herein. This objection is **OVERRULED AS MOOT**.

Finally, Plaintiffs object to a notation among the exhibits indicating that Oliver intended to hand deliver to the court an unredacted version of one exhibit and a video exhibit because Plaintiffs were not served these supplemental exhibits.  Because the court did not rely on these exhibits, the court **OVERRULES AS MOOT** this objection as well.

Additionally, as pointed out by Plaintiffs, the court agrees that Oliver's motion discusses irrelevant facts and facts not supported by summary judgment evidence and that some of Oliver's exhibits are unauthenticated.  However, the court has not relied on these unsubstantiated assertions or unauthenticated exhibits in its statement of the facts; rather, the court relied on the affidavits

of Plaintiffs, the deposition of Oliver, and the deposition of
Jackson in recounting the factual background of this case.
Therefore, Plaintiffs' objections are **OVERRULED AS MOOT.**

Additionally, to the extent that Plaintiffs state that
Oliver's testimony is uncorroborated and that he has no factual
support for his statements, Plaintiffs' objection is **OVERRULED.**
Plaintiffs themselves submitted his deposition as part of their
summary judgment evidence, Oliver's deposition was taken under
oath, and it is clearly competent summary judgment evidence.

E. **Oliver's Admissions**

Plaintiffs contend that because Oliver did not file an answer
to the first amended complaint, the court must find that
Plaintiffs' allegations in the first amended complaint have been
established.  Plaintiffs also assert that their requests for
admission should be deemed admitted because Oliver did not respond
within the time allowed by the applicable rule.

Oliver argues that the requests for admission should not
deemed as admitted because Oliver's counsel was not served with the
requests on March 21, 2016, as claimed.  Alternatively, Oliver
argues that if the requested facts are deemed admitted, Plaintiffs
still fall short of meeting the elements of their claims and he
moves to strike any conclusory statements in the requests and in
the amended complaint.

1.  **Plaintiffs' Requests for Admission**

21

Under Federal Rule of Civil Procedure 36, a party may request admission from the other side as to matters relating to the case, including facts or how the law applies to the facts.  Fed. R. Civ. P. 36(a); In re Carney, 258 F.3d at 418-19.  A party served with requests for admission has thirty days to respond or they are deemed admitted.  Fed. R. Civ. P. 36(a)(3).  The parties may stipulate to a different time frame under a Federal Rule of Civil Procedure 29 agreement, or the court may order a different due date.  Fed. R. Civ. P. 29; Fed. R. Civ. P. 36(a)(3).  Federal Rule of Civil Procedure 36(b) states that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

This case has been rife with discovery disputes.  Oliver contends that the parties agreed to extend his response period until May 9, 2016, a fact that Plaintiffs dispute.  Oliver argues that his attorney attempted to fax the responses to the requests for admission in a timely fashion and that Plaintiffs' counsel interrupted the fax transmission so the response could not be sent. The lack of a timely response on this and other discovery requests prompted a motion to compel by Plaintiffs' counsel.[67]

On June 2, 2016, the court ordered Oliver to mail the missing responses to the requests for admission and other discovery

---

[67]    See Doc. 38, Pls.' Mot. to Compel.

documents that day and, when that order was not fully honored, again ordered that the discovery be resent on June 9, 2016. Plaintiff received Oliver's response to the requests for admission on June 9, 2016.

Plaintiffs argue that in the face of an untimely response, Oliver should have moved for permission to file the responses to the requests for admission out of time. However, under Federal Rule of Civil Procedure 36(a)(3), the court has the power to order a longer period of time for a party to respond to requests for admission. The court's intervention in this dispute gave Oliver extra time to turn over the requests for admission to Plaintiffs. The court declines to deem Plaintiffs' requests for admission as admitted and declines to grant Plaintiffs' motion for summary judgment on this basis.

### 2. Oliver's Answer

At the time that Plaintiffs filed their motion for summary judgment, Oliver had not filed an answer to their first amended complaint, which made significant modifications to the factual allegations compared to the original complaint. Oliver later filed a general denial, which was stricken by the court, and Oliver was ordered to file a new answer within two weeks that complied with the Federal Rules of Civil Procedure.[68]   To date, Oliver has not complied with the court's order.

---

[68]    See Doc. 160, Ord. Dated June 8, 2017.

23

Federal Rule of Civil Procedure 37(b)(2)(A) lists appropriate sanctions for the failure of a party to obey a discovery order, which includes rendering default judgment against disobedient party.  The court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." <u>Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.</u>, 685 F.3d 486, 488 (5th Cir. 2012)(quoting <u>Pressey v. Patterson</u>, 898 F.2d 1018, 1021 (5th Cir. 1990)).

In the context of default judgments, the Fifth Circuit has explained that "there is a strong policy to decide cases on the merits" and that "[t]he Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by a procedural manner." <u>Fortenberry v. Texas</u>, 75 F. App'x 924, 926 n.1 (5th Cir. 2003)(unpublished)); <u>Lindsey v. Prive Corp.</u>, 161 F.3d 886, 893 (5th Cir. 1998)(quoting <u>Sun Bank v. Pelican Homestead & Sav. Ass'n</u>, 874 F.2d 274, 276 (5th Cir. 1989)).

Although Oliver has acted in a uniformly disorganized and untimely manner during this lawsuit, he has not failed to defend this suit and the court does not consider his actions to be willful misconduct.  The court finds that, in accordance with the Fifth Circuit's strong policy to decide cases on the merits, Plaintiffs' motion for summary judgment based on Oliver's failure to file an answer.

### III.  Motions for Summary Judgment

Plaintiffs have moved for summary judgment, contending specifically that there is no genuine dispute of material fact as to each of their claims.  Oliver has moved for summary judgment on Plaintiffs' claims for: (1) Section 1983 constitutional violations; (2) assault; (3) attempted sexual assault; (4) official oppression;[69] and (5) Title IX sexual harassment.[70]

## A.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary

---

[69]    In Plaintiffs' response to Oliver's motion, Plaintiffs explicitly state that they "are not suing Defendant for official oppression or attempted sexual assault."  Doc. 106, Pls.' Resp. to Def.'s Mot. for Summ. J. p. 17.

[70]    Plaintiffs did not bring a claim for Title IX sexual harassment.  See Doc. 36-1, Pls.' 1st Am. Compl.

judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

Cross-motions for summary judgment are considered separately under this rubric.  See Shaw Constructors v. ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004).  Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, and the court views the evidence in favor of each nonmovant.  See id.; Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)).

**B.  Section 1983**

Plaintiffs contend that there is no genuine issue of material fact on their Section 1983 claims.  Oliver generally moves for summary judgment on Plaintiffs' Section 1983 claims, asserting that Plaintiffs have not shown that they were deprived of their constitutional rights or that Oliver is entitled to qualified

immunity.[71]  The court will address Plaintiffs' Section 1983 claims
for substantive due process, equal protection, First Amendment
retaliation, and malicious prosecution.

A plaintiff can establish a prima facie case under Section
1983[72] for the deprivation of civil rights by establishing: (1) a
violation of a federal constitutional or statutory right; and (2)
that the violation was committed by an individual acting under the
color of state law.  Doe v. Rains Cty. Indep. Sch. Dist., 66 F.3d
1402, 1406 (5th Cir. 1995).  The statute creates no substantive
rights but only provides remedies for deprivations of rights
created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94
(1989).

Government officials are entitled to qualified immunity from
liability for civil damages "unless [(1)] the official violated a
statutory or constitutional right [(2)] that was clearly

---

[71]    Oliver's other arguments include: (1) that Oliver was sued in his
official capacity, not individual capacity; (2) that Plaintiffs do not have
evidence to support their causes of action; and (3) Plaintiffs cannot show
damages.  As to Oliver's argument that he was sued in his official capacity, this
argument is frivolous.  Plaintiffs have clearly indicated from the beginning of
this case, as evidenced by the original complaint, that Plaintiffs are suing
Oliver in his individual capacity.

[72]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State . . . , subjects, or causes to be
subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

27

established at the time of the challenged conduct." <u>Reichle v.</u> <u>Howards</u>, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012)(citing <u>Ashcroft</u> <u>v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).  Courts have discretion to determine in which order the two prongs are considered.  <u>al-Kidd</u>, 563 U.S. at 735.  Qualified immunity protects an officer regardless of whether the error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Pearson v.</u> <u>Callahan</u>, 555 U.S. 223, 231 (2009)(quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004)).

A common starting point for the qualified immunity arguments is to determine whether a plaintiff's allegations against an officer stated a violation of plaintiff's constitutional rights and whether that right was clearly established law at the time of the violation. <u>McCreary</u>, 738 F.3d at 656.  The two prongs may be considered in any order. <u>Id.</u>  A legal right is "clearly established" if pre-existing law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. <u>Hope</u>, 536 U.S. at 739; <u>Williams</u>, 352 F.3d at 1002-03 (quoting <u>Hope</u>, 536 U.S. at 539).  Ultimately, if the legal rules are sufficiently clear, then a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. <u>See</u> <u>Hare v.</u> <u>City of Corinth, Miss.</u>, 135 F.3d 320, 326 (5th Cir. 1998).

   1.  **State Actor**

Plaintiffs contend that Oliver is a state actor for purposes of Section 1983 liability based on his employment at a state university at the time of the incidents alleged in this case. Oliver does not challenge this proposition.  Courts have treated professors as state actors for purposes of Section 1983 analysis. See Hayut v. State Univ. of New York, 352 F.3d 733, 744 (2[d] Cir. 2003)("We think it [is] clear that a professor employed at a state university is a state actor.  A professor at a state university is vested with a great deal of authority over his students with respect to grades and academic advancement by virtue of that position.  When a professor misuses that authority in the course of performing his duties, he necessarily acts under color of state law for purposes of a section 1983 action."); see also Chestang v. Alcorn State Univ., 820 F. Supp.2d 772 (S.D. Miss. 2011)(considering a professor at a public university a state actor for purposes of Section 1983); see also Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450-51 (5th Cir. 1994)(treating a teacher at a public school as a state actor for purposes of Section 1983). Therefore, Plaintiffs have established this element of their Section 1983 claims.

**2. Sexual Harassment: Substantive Due Process and Equal Protection**

In her amended complaint, Mims claims that her Fourteenth Amendment rights to substantive due process and equal protection

29

were violated.[73]   In her motion for summary judgment, Mims appears to conflate the two clauses, simply alleging that sexual harassment violates the Fourteenth Amendment's substantive due process and equal protection clauses.[74]

    **a.   Substantive Due Process**

Substantive due process prevents governmental intrusions of individual liberties.  <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992).   The Supreme Court has stated, however, that it "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," and it has therefore "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."   <u>Id.</u> at 125, 128. Governmental action violates the substantive portion of the due process clause "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"

---

[73]   In the motion for summary judgment, Mims argues that Oliver is liable for "sexual harassment per se" because "[u]sing state authority to coerce sex is statutory rape," citing Texas Penal Code §§ 22.011 and 39.03 in support.   <u>See</u> Doc. 91, Pls.' Mot. for Summ. J. p. 12.

However, in Plaintiffs' amended complaint, there is no claim for sexual harassment per se.   The amended complaint refers to these two sections of the Texas Penal Code in reference to official oppression, a claim which Plaintiffs state explicitly that they dropped in filing the amended complaint.   The court only considers Plaintiffs' amended complaint to raise substantive due process and equal protection claims under Section 1983.

[74]   Additionally, in Oliver's motion for summary judgment, Oliver moves for summary judgment on Plaintiffs' Title IX sexual harassment quid pro quo claim.   Plaintiffs' first amended complaint did not raise a claim under Title IX. Their only claims for sexual harassment are brought under Section 1983 for Fourteenth Amendment violations.

Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(quoting Collins, 503 U.S. at 128).   To determine whether it meets this standard, the court must ask "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 847 n.8; see also Morris v. Dearborne, 181 F.3d 657, 668 (5th Cir. 1999).

Citing Taylor, 15 F.3d at 450-51, Mims argues that she has a right to be free from sexual harassment by a state actor.[75]   The facts in Taylor were particularly egregious.   There, a high school teacher seduced a fifteen-year-old freshman student into a sexual relationship.   Id. at 448.   Relying on prior case law that held that an elementary school student had a substantive due process right "to be free of state-occasioned damage to a person's bodily integrity," the court reasoned that if the Constitution protected a schoolchild from being tied to a chair or subjected to arbitrary paddlings, it surely protected a student from sexual fondling and statutory rape.   Id. at 451 (citing Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303, 305 (5th Cir. 1987)(tying a second-grader to his chair for two days is a substantive due process violation) and Fee v. Herndon, 900 F.2d 804, 808 (5th Cir. 1990)(corporal punishment wholly unrelated to legitimate state goal of maintaining a learning environment is a substantive due process violation)).

---

[75]      See Doc. 91, Pls.' Mot. for Summ. J. p. 11.

However, Taylor has not been extended to grant a constitutional cause of action to college-age students who were subjected to unwanted touching by a professor.   In Chestang, the court analyzed whether there was a substantive due process right to bodily integrity that was violated when a college student alleged "unwanted sexual advances" by his professor, consisting of "several telephone calls and in-person conversations as well as one incident when [the professor] 'rubbed against [the student's] body.'"   820 F. Supp.2d at 779-80.

The court held that, while the behavior was "no doubt inappropriate," it did "not rise to the level of activity that 'shocks the conscience' such that it violates substantive due process."   Id. at 780.   In reaching this decision, the court acknowledged Taylor's holding that a school-age child has a right to bodily integrity but found that the Fifth Circuit and other courts have only found this right to be violated when there is egregious misconduct.   The Chestang court noted that in Morris v. Dearborne, the Fifth Circuit did not find a substantive due process claim where a teacher sat a child on his lap and guided the child's hand to type violent and sexually explicit messages.   Chestang, 820 F. Supp.2d at 668 (citing Morris, 181 F.3d at 668).

Both Mims and Oliver have moved for summary judgment on this claim.   In determining whether Mims has alleged a substantive due process violation, the court must determine whether the facts taken

32

in the light most favorable to the non-movant, may properly be characterized as conscience-shocking.   As Oliver denies any improper touching of Mims' person, Mims has not established an undisputed factual basis for summary judgment on this claim.

Turning to Oliver's motion for summary judgment, taking Mims' facts as true, while Oliver's conduct towards Mims was certainly inappropriate and boorish, it does not shock the conscience. Oliver's behavior in this case is certainly distinguishable from Taylor, where a teacher committed a statutory rape of an underaged student, and is similar to Chestang, wherein the court did not find a substantive due process violation.

Even if Mims were able to show that she had a constitutional right under the facts of this case, she still cannot overcome Oliver's assertion of qualified immunity.   It is not clearly established law that there is a constitutional, substantive due process right to be free from unwanted touching by a professor in circumstances such as presented in this case.   Therefore, Oliver's motion for summary judgment on this claim should be granted.

### b.   Equal Protection

In Southard v. Tex. Bd. of Crim. J., 114 F.3d 539, 550 (5th Cir. 1997), the Fifth Circuit held that "[s]ex discrimination and sexual harassment *in public employment* violates the Equal Protection Clause of the Fourteenth Amendment." (emphasis added). The Fifth Circuit has not directly addressed whether sexual

33

harassment outside the workplace may violate the equal protection
clause.  In <u>Young v. Isola, Miss.</u>, No. 3:15-CV-00108-GHD, 2016 WL
6916790, at *6 (N.D. Miss. Nov. 13, 2016)(unpublished), a case
where a police officer sexually harassed a store clerk and grabbed
her arm, the court declined to find an equal protection violation,
stating that "the Fifth Circuit has not to date recognized an equal
protection claim based on verbal sexual harassment and an unwanted
touching not resulting in physical injury in a non-employment
context."  <u>Id.</u>

In <u>Taylor</u>, the Fifth Circuit, sitting en banc, declined to
address whether the plaintiff had stated a claim under the equal
protection clause of the Fourteenth Amendment.  In the vacated
opinion, the Fifth Circuit had addressed the issue of whether a
sexual harassment claim could be recognized outside the employment
context, stating that sexual harassment "is a form of sexual
discrimination proscribed by the equal protection clause" and that
"[a]lthough most of the cases on this subject arise in the context
of harassment in the work place, there is no meaningful distinction
between the work environment and school environment which would
forbid such discrimination in the former context and tolerate it in
the latter."  <u>Doe v. Taylor Indep. Sch. Dist.</u>, 975 F.2d 137, 149
(5th Cir. 1992), <u>reh'g granted & op. vacated by</u> <u>Taylor</u>, 15 F.3d 443
(5th Cir. 1994).  However, the Fifth Circuit chose not to restate
this reasoning when sitting en banc, instead deciding not to

address whether there is an equal protection right to be free from sexual harassment outside the employment context.

Other circuits have elected to create a broader definition of the right to be free from sexual harassment, stating that sexual harassment by state actor violates the equal protection clause. See, e.g., Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999); Wright v. Rolette Cty., 417 F.3d 879, 884 (8th Cir. 2005); Hickman v. Laskodi, 45 F. App'x 451, 453 (6th Cir. 2002).

In Chestang, the court looked to Second Circuit and Fourth Circuit cases that both found that sexual harassment towards a student by a professor can constitute an equal protection violation by the university and the professor.  See Jennings v. Univ. of N. C., 482 F.3d 686, 701 (4th Cir. 2007)(in the context of a college coach and a student, finding an "equal protection right to be free from sexual harassment in an education setting"); Hayut, 352 F.3d at 744-49 (student allowed to pursue a hostile educational environment claim under Section 1983 where professor repeatedly made off-color comments in front of the class at her expense). Notably, the sexual harassment in the cases cited was found to be sufficiently severe to have altered the educational environment. See Jennings, 482 F.3d at 701;  Hayut, 352 F.3d at 744-45.  The Chestang court agreed with these other circuits in finding that there was a right to be free from sexual harassment in the

professor-student context, stating that there was no distinction between that and the employer-employee context.  820 F. Supp.2d at 780-81.

Despite the positions taken by the above-mentioned courts, this court is not wont to extend constitutional rights beyond the perimeters explicitly set by Fifth Circuit law.  The Fifth Circuit has chosen not to recognize an equal protection right to be free from sexual harassment outside the employment context.  Absent the Fifth Circuit's explicit acknowledgment of such a right and in light of the decisions such as Young, the court cannot hold that Oliver's boorish behavior violated clearly established law of which a reasonable professor in this circuit would have known.  Mims' equal protection claim fails as a matter of law.

### 3.    Fourth Amendment Unreasonable Seizure

Mims pled a Section 1983 claim for unreasonable seizure under the Fourth Amendment, alleging that Oliver unreasonably seized her person when he attempted to block her from leaving his office and acted with excessive force when he touched her breast.  Oliver argues that Mims has not shown that she was deprived of any constitutional right and also raises qualified immunity.

The Supreme Court has counseled that a seizure occurs for purposes of the Fourth Amendment only where a government actor has, by means of physical force or a show of authority, restrained a person's liberty and where, in view of all the circumstances, a

36

reasonable person would have believed that she was not free to leave. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); United States v. Mendenhall, 446 U.S. 544, 554 (1980). In California v. Hodari, 499 U.S. 621 (1999), the Court held that in order to show a seizure of a person under the Fourth Amendment, there must either be the application of force, "however slight," or a submission to an officer's show of authority.

In her motion for summary judgment, Mims simply cites Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011), for the proposition that, in order to prevail on her Fourth Amendment excessive use of force claim, she must simply establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; (3) and that the excessiveness of the force was unreasonable. Carnaby was decided in the context of a traffic stop that devolved into a police shooting. Id. at 186. The court questions whether the present facts even trigger a Fourth Amendment analysis.

In Jones v. Wellham, 104 F.3d 620, 622 (4th Cir. 1997), a young woman was raped by a police officer after being stopped on suspicion of driving while intoxicated. The court found that "[b]ecause the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct . . . the claim was not one of a Fourth Amendment violation." Id. (internal citations omitted). The court in Poe

v. Leonard, 282 F.3d 123, 125 (2[d] Cir. 2002), also found that the Fourth Amendment was not implicated when a female police officer was surreptitiously videotaped undressing at a police training center, reasoning that the Fourth Amendment did not apply because the objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity. Id. at 136 (collecting cases).   In another case with similar facts, Doe v. Luzerne Cty., 660 F.3d 169, 172 (3[d] Cir. 2011), the court found that, when a female police officer was secretly filmed while required to undress and submit to a decontaminating process after she was exposed to filth and fleas, the Fourth Amendment did not apply, agreeing with the decision in Poe.   In making this finding, the court reasoned that the filming was for personal reasons and occurred outside the scope of a governmental investigation. Id. at 179.

In Doe v. S & S Consol. I.S.D., 149 F. Supp.2d 274, 278-83, 286-87 (E.D. Tex. 2001), a decision that was later affirmed by the Fifth Circuit, the plaintiff asserted that her minor daughter was "unreasonably seized" when she was wrapped in a sheet at school. The minor was suffering from severe bipolar disorder with violent and suicidal tendencies, and school officials stated the confinement was to protect her from hurting herself or other classmates.   Id.   The mother argued that her daughter was "unreasonably seized" by the school officials, which the court

38

rejected, stating that it did not believe that the conduct fell within the scope of the Fourth Amendment's protections.  Id.

In Young, 2016 WL 6916790 at *2, in addition to the allegation that the police officer violated the plaintiff's equal protection rights by sexually harassing her, the plaintiff also alleged that the officer "forcefully grabbed her by her left arm, thereby detaining and preventing Plaintiff from carrying on with her assigned duties."  The plaintiff further complained that the officer watched her while she was working and yelled expletives at her face.  Id.  The district court found that the facts alleged by the plaintiff did not "constitute a cognizable seizure under the Fourth and Fourteenth Amendments" and that the plaintiff had not shown an "actionable injury."  Id. at *7.

As in S & S Consol. I.S.D., Mims contends that her person was "unreasonably seized" by Oliver.  Viewing the facts most favorably to Oliver, for purposes of Mims' motion for summary judgment, he claims that he did not touch her or meet with her in his office.  Therefore, no "seizure" occurred for purposes of Mims' motion, and Mims' motion on this claim must be denied.

Looking at the facts most favorably to Mims for purposes of Oliver's motion, Mims' claim fails as a matter of law.  There is no authority cited by Mims, and the court is aware of none, indicating that Oliver's conduct falls within the scope of the Fourth Amendment.  The court concludes that the Fourth Amendment cannot

form the basis for Mims' claims against Oliver.

Even if Mims met her burden to demonstrate that she had a constitutional right under the facts alleged, the court can find nothing to overcome Oliver's claim for qualified immunity. Mims has failed to cite authority indicating that Oliver's actions violated clearly established law. In fact, cases such as <u>Young</u>, <u>S & S Consol. I.S.D.</u>, <u>Poe</u>, <u>Jones</u>, and <u>Luzerne Cty.</u> indicate that courts have found conduct similar to this case not to constitute a cognizable Fourth Amendment claim. Therefore, even if Mims had established that a Fourth Amendment constitutional violation, she has not met her burden to overcome Oliver's assertion of qualified immunity.

### 4. First Amendment Retaliation

Plaintiffs also allege that Oliver retaliated against them for the exercise of their rights to free speech and assembly when he filed what they contend to be false criminal charges against them. Plaintiffs' motion for summary judgment barely skims the surface of what they need to prove in support of their First Amendment claims. The court must therefore examine the law and facts of this matter in detail to determine if Plaintiffs' motion may be granted on their First Amendment claims.

The First Amendment protects an individual against official reprisal for protected speech. <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006)(quoting <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10

(1998)); Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).
"[T]he law is settled that as a general matter the First Amendment
prohibits government officials from subjecting an individual to
retaliatory actions, including criminal prosecutions, for speaking
out." Hartman, 547 U.S. at 256.

In order to succeed on a First Amendment retaliation claim, a
plaintiff must show that: (1) he was engaged in constitutionally
protected activity; (2) "the defendants' actions caused [the
plaintiff] to suffer an injury that would chill a person of
ordinary firmness from continuing to engage in that activity;" and
(3) the defendants were "substantially motivated against the
plaintiff['s] exercise of constitutionally protected conduct."
Keenan, 290 F.3d at 258.  The plaintiff who is pursuing a claim
based on retaliatory prosecution must also plead and prove the
absence of probable cause to support the criminal charges.
Hartman, 547 U.S. at 265-66; Keenan, 290 F.3d at 260.

For speech to qualify for constitutional protection, it must
involve a matter of public concern.  Snyder v. Phelps, 562 U.S.
443, 452 (2011)("[R]estricting speech on purely private matters
does not implicate the same constitutional concerns as limiting
speech on matters of public interest . . . .").  "Speech deals with
matters of public concern when it can be fairly considered as
relating to any matter of political, social, or other concern to
the community or when it is a subject of legitimate news interest;

that is, a subject of general interest and of value and concern to the public." <u>Id.</u> (internal citations and quotation marks omitted)(quoting <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983); <u>City of San Diego, Cal. v. Roe</u>, 543 U.S. 77, 83-84 (2004)). The test to determine whether speech is public focuses on content, form, and context and requires evaluation of all of the circumstances of the speech, including what was said, where it was said, and how it was said. <u>Snyder</u>, 562 U.S. at 453.

Mims and Jackson must also establish that Oliver was acting under color of state law when he took the allegedly retaliatory action. A purely private act will not be considered to be taken under color of state law simply because the person is a public employee. <u>See</u> <u>Smith v. Winter</u>, 782 F.2d 508, 512 (5th Cir. 1986).

To determine if a government official is acting under color of state law, courts must look at whether the official "misuse[d] or abuse[d] his official power," and (2) if "there [was] a nexus between the victim, the improper conduct, and [the officer's] performance of official duties." <u>Bustos v. Martini Club Inc.</u>, 599 F.3d 458, 464-65 (5th Cir. 2010)(quoting <u>Townsend v. Moya</u>, 291 F.3d 859, 861 (5th Cir. 2002). "Acts of officers performing their official duties 'are included whether they hew to the line of their authority or overstep it,' but acts of officers 'in the ambit of their personal pursuits' are generally excluded." <u>Bustos</u>, 599 F.3d at 464.

Case law demonstrates that the line separating official actions from personal pursuits in determining whether an action was taken under color of state law depends on whether official power has been misused. For example, in Townsend, 291 F.3d at 860, 862-863, the Fifth Circuit found that a prison guard who engaged in horseplay with an inmate, including stabbing him in the buttocks, was not acting under color of state law during the incident.

The Fifth Circuit reasoned that even though the guard had direct authority over the inmate, he was not using his authority to injure the inmate. Id. at 862. The court stated that the "key inquiry" in deciding whether the guard acted under the color of state law was whether he had a "purely private aim" and that "[t]he inquiry is not whether authority is possessed, but whether it is used or misused." Id.

On the other hand, in Taylor, 15 F.3d at 447-52, the Fifth Circuit found that a teacher was acting under color of state law when he sexually abused an underaged student. Townsend distinguished Taylor, stating, "The teacher required the student to do little classwork, rewarded her with high grades, and asked other teachers to raise her grades in inducing her to have a sexual relationship with him." Townsend, 291 F.3d at 863 (citing Taylor, 15 F.3d at 447-52). The court concluded that these "inappropriate actions were clearly connected to his duties and obligations as a teacher," and were not "purely personal" like the prison guard's

43

actions.  Id.

In Bustos, 599 F.3d at 460-61, the plaintiff alleged that several off-duty police officers assaulted him at a bar.  The court affirmed the lower court's dismissal of the Section 1983 claims against the police officers, holding that, based on the plaintiff's allegations, the officers had not used their authority to carry out their actions.  Id. at 465-66.

Here, the summary judgment record supports a finding that Oliver had authority over Mims as her professor.  And if Mims had alleged that Oliver misused his authority as her professor to give her a grade less than what she had earned, the court would agree that the retaliatory action was taken under color of state law.  But Mims and Jackson claim that the retaliatory action was filing allegedly false criminal charges with the police.

Although the court concedes that whether Mims, Jackson, or the other two men robbed Oliver is disputed, what is clear is that Oliver was not acting under color of state law when he filed the criminal charges against Mims and Jackson.  Rather, he was acting in his capacity as a private citizen reporting a crime.  There are no facts showing that he used or misused his authority as a professor in making the report to the police.  In the absence of any evidence that he was acting as Mims' professor when he filed criminal charges, the court finds that Mims and Jackson's motion for summary judgment on their First Amendment retaliation claims

44

must be denied as the claims fail as a matter of law.  The court recommends, sua sponte, that summary judgment in favor of Oliver be entered on these claims.[76]

### 5.  Malicious Prosecution

In Plaintiffs' first amended complaint, they allege claims for malicious prosecution under Section 1983, contending that Oliver maliciously prosecuted them by filing false robbery charges. Plaintiffs have moved for summary judgment on this claim, but incorrectly cite the elements for a malicious prosecution claim brought under Texas law.  Oliver moves for summary judgment generally on Plaintiffs' Section 1983 claims.  The court considers the motions.

The Fifth Circuit does not recognize an independent federal cause of action for malicious prosecution.  Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009)(citing Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003)).  Rather, violations of specific

---

[76]   Oliver moved for summary judgment generally on Plaintiffs' Section 1983 claims, but did not raise the argument that Oliver was not acting under color of state law to Plaintiffs' First Amendment retaliation claim.  Federal Rule of Civil Procedure 56(f) allows the court, "[a]fter giving notice and a reasonable time to respond," to either "grant summary judgment for a nonmovant" or to "grant the motion on grounds not raised by a party."  Fed. R. Civ. P. 56(f); see also Nautilus Ins. Co. v. Home Remedy Servs., LLC, No. H-09-3508, 2011 WL 13130886, at *8 (S.D. Tex. 2011); Norton v. Assisted Living Concepts, Inc., 786 F. Supp.2d 1173, 1186-87 (E.D. Tex. 2011).  A district court may sua sponte enter summary judgment "only if the losing party is on notice and has the opportunity to come forward with all its evidence."  Luig v. North Bay Enterprises, Inc., 817 F.3d 901, 905 (5th Cir. 2016); see also Celotex, 477 U.S. at 326.
Pursuant to Federal Rule of Civil Procedure 56(f) the court gives notice of its recommendation that summary judgment be granted on this claim.  The court will reconsider this recommendation on a timely-filed objection to this Memorandum and Recommendation.

constitutional rights occurring in relation to a "malicious prosecution" can be redressed pursuant to those individual constitutional protections and not under the broad category of malicious prosecution. Id.

The Fifth Circuit has clearly stated that malicious prosecution claims under Section 1983 are not actionable independent of another constitutional violation, and therefore, in the absence of a separate constitutional violation, Plaintiffs cannot pursue this claim on its own.

## C.   Remaining State Law Claims

If the above recommendations are adopted by the district court, the federal claims that underpinned the court's federal question jurisdiction will be dismissed, leaving Plaintiffs' state law claims.

28 U.S.C. § 1367(c) states:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

    (1) the claim raises novel or complex issues of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which is has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the present case, the court has dismissed the federal claims over which it had original jurisdiction. In the court's opinion, the exercise of supplemental jurisdiction over purely state law disputes would be an abuse of discretion. See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000). The court declines to reach Plaintiffs' and Oliver's motions on these remaining claims and recommends that these claims be dismissed.

### IV.   Conclusion

For the reasons discussed above, it is **RECOMMENDED** that Plaintiffs' federal claims be **DISMISSED**. It is also **RECOMMENDED** that the court decline to exercise supplemental jurisdiction over the remaining state law claims and **DISMISS** the state law claims.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this  18th  day of July, 2017.

47

U.S. MAGISTRATE JUDGE